1   MARK S. ADAMS (Bar No. 125485)
    EUDEEN Y. CHANG (211721)
2   JEFFER MANGELS BUTLER & MITCHELL LLP
    3 Park Plaza, Suite 1100
3   Irvine, California  92614
    Telephone:     (949) 623-7200
4   Facsimile:     (949) 623-7202
    Email:  markadams@jmbm.com

5

6   Attorneys for Defendant and Counter-Claimant
    Security National Guaranty, Inc.

7

8

9               **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11

12  FOURTH THIRD LLC, a Delaware limited          CASE NO.  14-cv-03655-HRL
    liability company,
13                                                **ANSWER, AFFIRMATIVE DEFENESES,**
                 Plaintiff,                       **AND COUNTERCLAIM**
14
            v.                                    **DEMAND FOR JURY TRIAL**
15
    SECURITY NATIONAL GUARANTY, INC.,
16  a California corporation; TANAM CORP., a
    Nevada corporation, ABBAT CORP., a Nevada
17  corporation and DOES 1 through 10, inclusive,

18               Defendants.

19

20  _____

21  SECURITY NATIONAL GUARANTY, INC.,
    a California corporation
22
                 Counter-Claimant,
23
            v.
24
    FOURTH THIRD LLC, a Delaware limited
25  liability company, and MEDLEY CAPITAL
    CORPORATION, a Delaware corporation,
26
                 Counter-Respondents.
27

28

PRINTED ON

RECYCLED PAPER
LA 11209085v3

Jeffer Mangels
Butler & Mitchell LLP

JMBM

Defendant Security National Guaranty, Inc. ("SNG" or "Defendant" or "Borrower"), by and through the undersigned counsel, files its Answer and Affirmative Defenses to Plaintiff's Complaint, and Counterclaim against Plaintiff Fourth Third LLC ("Fourth Third" or "Plaintiff" or "Lender") and Medley Capital Corporation ("Medley"), and states as follows:

## PARTIES AND VENUE

1.      SNG admits the allegations of Paragraph 1 of the Complaint.

2.      SNG admits the allegations of Paragraph 2 of the Complaint.

3.      SNG admits the allegations of Paragraph 3 of the Complaint.

4.      SNG admits that Defendant Abbat Corporation ("Abbat"), a Nevada Corporation, holds a junior lien or encumbrance on certain real and/or personal property that is the subject of this action (the "Property"), and that Abbat is owned and operated by Ghandour's wife, Anna Nelson Ghandour ("Anna Ghandour").  SNG denies the remaining allegations in Paragraph 4 of the Complaint.

5.      SNG admits that Defendant Tanam Corporation ("Tanam"), a Nevada Corporation, is owned and operated by Anna Ghandour.  SNG denies the remaining allegations in Paragraph 5 of the Complaint.

6.      SNG states that a response to Paragraph 6 of the Complaint is premature in that Plaintiff has not identified the names of any of the fictitious names or entities plead in the action. To the extent that Plaintiff intends to identify any act or purporting to act on behalf of SNG the allegations are deemed denied as set forth above in response to Paragraph 6 of the Complaint.

7.      SNG states that a response to Paragraph 7 of the Complaint is premature in that Plaintiff has not identified the names of any of the fictitious names or entities plead in the action. To the extent that Plaintiff intends to identify any act or purporting to act on behalf of SNG the allegations are deemed denied as set forth above in response to Paragraph 7 of the Complaint.

8.      SNG admits that Westminster Capital, Inc., a Delaware corporation, holds a senior lien and encumbrance on the Property.  SNG denies the remaining allegations in Paragraph 8 of the Complaint.

LA 1120985v3

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

## **FACTS COMMON TO ALL CAUSES OF ACTION**

**Introductory Allegations**

9.      SNG denies that in April 2008, Borrower approached Lender, seeking a pre-construction loan.  SNG admits the remaining allegations in Paragraph 9 of the Complaint.

10.      SNG admits the allegations of Paragraph 10 of the Complaint.

11.      SNG denies that Borrower was unable to timely secure CCC approval, and that in connection with the First Amendment, the parties amended section 2.4.3 of the Credit Agreement to increase the principal balance due under the Loan as purported additional fees as set forth in a side letter of the same date (the "Side Letter").  SNG admits the remaining allegations in Paragraph 11 of the Complaint.

12.      SNG admits that Lender extended the maturity date a second time, on or about December 13, 2012, to June 15, 2014 (the "Final Maturity Date").  SNG denies the remaining allegations in Paragraph 12 of the Complaint.

13.      SNG denies the allegations of Paragraph 13 of the Complaint.

14.      SNG denies that Lender provided the extension because unable to timely secure CCC approval.  SNG admits the remaining allegations in Paragraph 14 of the Complaint.

15.      SNG admits that on July 3, 2014, Lender sent a Notice of Maturity Default, Demand for Payment and Reservation of Rights to Borrower, demanding immediate payment in full of the Loan.  SNG denies the remaining allegations in Paragraph 15 of the Complaint.

16.      SNG denies the allegations of Paragraph 16 of the Complaint.

17.      SNG admits that Lender filed this action.  SNG denies the remaining allegations in Paragraph 17 of the Complaint.

**The Loan Documents**

18.      SNG admits the allegations of Paragraph 18 of the Complaint.

(a)      SNG admits the allegations of Paragraph 18a of the Complaint.

(b)      SNG denies any modification or amendment of purported fees resulting from the Side Letter.  SNG admits the allegations of Paragraph 18b of the Complaint.

LA 1120908v3

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

PRINTED ON
RECYCLED PAPER

Jeffer Mangels
Butler & Mitchell LLP
JMBM

1    (c)    To the extent that the allegations of Paragraph 18c refer to the agreement

2    attached as Exhibit A to the Complaint, SNG denies them because the actual agreement entered into

3    between the parties speaks for itself and is the best evidence of any agreements reached between the

4    parties.

5    19.    SNG admits that Lender filed a UCC-1 Financing Statement (the "Financing

6    Statement").  SNG denies the remaining allegations in Paragraph 19 of the Complaint.

7    20.    SNG admits the allegations of Paragraph 20 of the Complaint; however, Borrower is

8    also indebted to Tanam for up to $5 million secured by a Deed of Trust dated January 6, 2014.

9    21.    SNG admits the allegations of Paragraph 21 of the Complaint.

10    22.    SNG admits the allegations of Paragraph 22 of the Complaint.

11    23.    SNG admits the allegations of Paragraph 23 of the Complaint.

12    24.    SNG admits that Borrower and Lender executed the November 11, 2010 Side Letter

13    and that a true and correct copy of it is attached to the Complaint as Exhibit I.  SNG denies the

14    remaining allegations in Paragraph 24 of the Complaint.

15    25.    SNG admits the allegations of Paragraph 25 of the Complaint.

16    26.    SNG admits the allegations of Paragraph 26 of the Complaint.

17    27.    SNG admits the allegations of Paragraph 27 of the Complaint.

18    28.    SNG admits the allegations of Paragraph 28 of the Complaint.

19    29.    SNG admits the allegations of Paragraph 29 of the Complaint.

20    **Borrower's Efforts to Obtain a CDP**

21    30.    SNG admits the allegations of Paragraph 30 of the Complaint.

22    31.    SNG denies that Borrower indicated to Lender that it expected to obtain a CDP by

23    2010.  SNG admits the remaining allegations of Paragraph 31 of the Complaint.

24    32.    SNG denies the allegations in Paragraph 32 of the Complaint.

25    33.    SNG admits that on May 30, 2014, the CCC issued Borrower a Notice of Intent for

26    the Monterey Development.  SNG denies the remaining allegations in Paragraph 33 of the

27    Complaint.

28    34.    SNG denies the allegations of Paragraph 34 of the Complaint.

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 11209085v3

- 4 -

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

**The Borrower's Default under the Loan Documents**

35.　　SNG denies the allegations of Paragraph 35 of the Complaint.

36.　　SNG denies the allegations of Paragraph 36 of the Complaint.

37.　　SNG lacks sufficient knowledge or information to determine whether the Lender transmitted to Westminster a Notice of Default, Demand for Payment and Reservation of Rights on July 3, 2014.  SNG admits the remaining allegations in Paragraph 37 of the Complaint.

38.　　SNG denies the allegations of Paragraph 38 of the Complaint.

39.　　SNG denies the allegations of Paragraph 39 of the Complaint.

**Summary of Collateral**

40.　　SNG admits that Borrower granted to Lender and Lender's Trustee a lien on the Property.  SNG denies the remaining allegations in Paragraph 40 of the Complaint.

41.　　SNG lacks sufficient knowledge or information to determine the truth of the allegations in Paragraph 41 of the Complaint.

**Necessity for Receiver**

42.　　SNG denies the allegations of Paragraph 42 of the Complaint.

43.　　SNG denies the allegations of Paragraph 43 of the Complaint.

**FIRST CAUSE OF ACTION**

**(Judicial Foreclosure of Deed of Trust – Against All Defendants)**

44.　　SNG repeats and incorporates its responses to the corresponding allegations of the preceding paragraphs as if set forth fully herein.

45.　　SNG denies the allegations of Paragraph 45 of the Complaint.

46.　　SNG denies the allegations of Paragraph 46 of the Complaint.

47.　　SNG denies the allegations of Paragraph 47 of the Complaint.

48.　　SNG denies the allegations of Paragraph 48 of the Complaint.

49.　　SNG denies the allegations of Paragraph 49 of the Complaint.

50.　　SNG admits that at all relevant times mentioned in the Complaint, Borrower remained in possession of the Property, and that Tanam, Abbat, and the Junior Lienholders have, or

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

PRINTED ON

RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

claim to have, some interest in the Property.  SNG denies the remaining allegations in Paragraph 50 of the Complaint.

51.     SNG denies the allegations of Paragraph 51 of the Complaint.

## SECOND CAUSE OF ACTION

### (Appointment of Receiver – Against the Borrower)

52.     SNG repeats and incorporates its responses to the corresponding allegations of the preceding paragraphs as if set forth fully herein.

53.     To the extent that the allegations of Paragraph 53 refer to a document attached as an exhibit to the Complaint, SNG denies them because the actual document speaks for itself and is the best evidence of its contents.

54.     SNG denies the allegations of Paragraph 54 of the Complaint.

55.     SNG denies the allegations of Paragraph 55 of the Complaint.

56.     SNG denies the allegations of Paragraph 56 of the Complaint.

57.     SNG denies the allegations of Paragraph 57 of the Complaint.

58.     SNG denies the allegations of Paragraph 58 of the Complaint.

59.     SNG denies the allegations of Paragraph 59 of the Complaint.

60.     SNG denies the allegations of Paragraph 60 of the Complaint.

61.     SNG denies the allegations of Paragraph 61 of the Complaint.

62.     SNG denies the allegations of Paragraph 62 of the Complaint.

63.     SNG denies the allegations of Paragraph 63 of the Complaint.

## THIRD CAUSE OF ACTION

### (Preliminary Injunction In Aid of Receiver – Against All Defendants)

64.     SNG repeats and incorporates its responses to the corresponding allegations of the preceding paragraphs as if set forth fully herein.

65.     SNG denies the allegations of Paragraph 65 of the Complaint.

66.     SNG denies the allegations of Paragraph 66 of the Complaint.

PRINTED ON RECYCLED PAPER

LA 11209085v3

ANSWER, AFFIRMATIVE DEFENESES, AND COUNTERCLAIM

**FOURTH CAUSE OF ACTION**

**(Judicial Foreclosure of Personal Property – Against Borrower and Does 6 through 10)**

67.     SNG repeats and incorporates its responses to the corresponding allegations of the preceding paragraphs as if set forth fully herein.

68.     SNG denies the allegations of Paragraph 68 of the Complaint.

69.     SNG denies the allegations of Paragraph 69 of the Complaint.

70.     SNG admits that Borrower, or its agents, are in possession of certain personal property identified the Deed of Trust, and that Tanam and/or Abbat have or claim to have some interest in this personal property.  SNG denies the remaining allegations in Paragraph 70 of the Complaint.

71.     SNG denies the allegations of Paragraph 71 of the Complaint.

**WHEREFORE,** SNG demands on all Causes of Action that this Court enters judgment against Fourth Third LLC, including an award of attorneys' fees and costs, and that Fourth Third LLC take nothing by way of its Complaint.

**<u>AFFIRMATIVE DEFENSES</u>**

SNG further alleges the following affirmative defenses:

**<u>FIRST AFFIRMATIVE DEFENSE</u>**

(Active Tortious Conduct)

The Complaint and each cause of action therein is barred by Plaintiff's active and primary tortious conduct.

**<u>SECOND AFFIRMATIVE DEFENSE</u>**

(Anti-Deficiency/One Form of Action Code of Civil Procedure §§ 580b, 580d, 726)

The Complaint and each cause of action therein is barred by anti-deficiency/one form of action pursuant to Code of Civil Procedure §§ 580b, 580d, 726.

**<u>THIRD AFFIRMATIVE DEFENSE</u>**

(Counterclaim)

The Complaint and each cause of action therein is barred by the Counterclaim.

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

**FOURTH AFFIRMATIVE DEFENSE**

(Estoppel)

The Complaint and each cause of action therein is barred by the doctrine of estoppel.

**FIFTH AFFIRMATIVE DEFENSE**

(Extinguishment)

The Complaint and each cause of action therein is barred by an extinguished existing written agreement.

**SIXTH AFFIRMATIVE DEFENSE**

(Failure to State a Cause of Action)

The Complaint and each cause of action therein fails to state facts sufficient to constitute a cause of action upon which any relief can be granted.

**SEVENTH AFFIRMATIVE DEFENSE**

(Full Performance)

Defendant alleges that it fully performed all obligations required of it and, therefore, it is not liable to Plaintiff for damages, if any.

**EIGHTH AFFIRMATIVE DEFENSE**

(Intentional Act)

The Complaint and each cause of action therein is barred by Plaintiff's intentional acts.

**NINTH AFFIRMATIVE DEFENSE**

(Intentional Misrepresentation)

The Complaint and each cause of action therein is barred by Plaintiff's intentional misrepresentation.

**TENTH AFFIRMATIVE DEFENSE**

(Performance Excused or Prevented)

The Complaint and each cause of action therein is barred by performance of duties excused or prevented.

LA 1120985v3
ANSWER, AFFIRMATIVE DEFENESES, AND COUNTERCLAIM

## ELEVENTH AFFIRMATIVE DEFENSE

(UCC Defenses)

The Complaint and each cause of action therein is barred by the California Commercial Code Defenses and Plaintiff's alleged UCC-1 Financing Statement is unenforceable.

## TWELVTH AFFIRMATIVE DEFENSE

(Unclean Hands)

The Plaintiff comes before this Court with unclean hands, and is therefore barred from obtaining any relief from this answering Defendant.

## THIREETENTH AFFIRMATIVE DEFENSE

(Unconscionability)

The Complaint and each cause of action therein is barred by unconscionability.

## FOURTHEENTH AFFIRMATIVE DEFENSE

(Waiver)

The Complaint and each cause of action therein is barred by the doctrine of waiver.

## FIFTHEENTH AFFIRMATIVE DEFENSE

(Invalid Notice of Default and Unenforceable Penalty)

The Complaint's causes of action to foreclose on Plaintiff's alleged collateral are barred because the Notice of Default is incorrect and invalid and contains amounts that represent unenforceable penalties.

## SIXTEENTH AFFIRMATIVE DEFENSE

(Additional Affirmative Defenses)

The Complaint and each cause of action therein is stated in conclusory terms, and therefore Defendant cannot fully anticipate all affirmative defenses that may be applicable to this action. Accordingly, Defendant hereby reserves the right to add additional affirmative defenses, if and to the extent such affirmative defenses are applicable to this action.

## RESERVATION OF RIGHTS

SNG reserves the right to amend its Answer and Affirmative Defenses in the course of this litigation based on such other and further defenses which future investigation reveals to be

LA 1120908v5

ANSWER, AFFIRMATIVE DEFENESES, AND COUNTERCLAIM

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1    appropriate.

2                                            **COUNTERCLAIMS**

3          Defendant and Counter-Claimant Security National Guaranty, Inc. ("SNG"), by way of its

4    Counterclaim against Fourth Third LLC ("Fourth Third") and Medley Capital Corporation

5    ("Medley"), alleges as follows:

6                                        **NATURE OF THE ACTION**

7          1.        Fourth Third loaned funds to SNG in connection with SNG's development of a

8    project on the Monterey Peninsula.  Nearly a year before the loan matured, Fourth Third and

9    Medley approached SNG about an early payoff of the loan. SNG responded to Fourth Third and

10   Medley about modifying the loan and for Fourth Third to accept a discounted payoff of the loan.

11   Fourth Third, through its agent and loan servicer, Medley, represented that if SNG would continue

12   to process the entitlements on the Project, as defined below, and make arrangements to borrow

13   funds in an amount sufficient to pay off the senior loan held by a third party, plus at least $15

14   million, then Fourth Third would accept a discounted loan payoff of $15 million.  SNG did what

15   Fourth Third required, but then Fourth Third refused to accept the discounted payoff, put SNG in

16   default, and now seeks to foreclose on the Property to take for itself windfall profits and the benefits

17   and value that SNG has created therein after the permits have been issued.  SNG is seeking to

18   recover from Fourth Third and Medley the damages and harm that they have caused and will cause.

19                                               **PARTIES**

20         2.        Counter-complainant SNG is a California corporation, with its principal place of

21   business in San Francisco, California.  SNG's owner, President, and Chief Executive Officer is Dr.

22   Edmond Ghandour ("Dr. Ghandour").  SNG is a small family owned business, not a large

23   conglomerate.

24         3.        On information and belief, Counter-respondent, Fourth Third was and is a Delaware

25   limited liability company, with its principal place of business in New York, New York.

26         4.        On information and belief, Counter-respondent, Medley was and is a Delaware

27   corporation, with its principal place of business in New York, New York.  Medley is Fourth Third's

28   servicer with respect to the Loan (as defined below), and Fourth Third's agent with respect to the

JMBM | Jeffer Mangels Butler & Mitchell LLP

1    Loan and with respect to Fourth Third's relationship with SNG.

2

3                        **FACTUAL ALLEGATIONS**

4        **The Project**

5        5.       Monterey Bay Shores Eco-Resort (the "Project") will be a mixed-use hotel,

6    condominium and residential luxury development on 40 acres with 5-star amenities and services,

7    integrated into a celebrated natural habitat on the Monterey Peninsula in California.  It is designed

8    to be the most ecological green resort undertaken in the United States.  The Project will include

9    natural and saltwater pools, botanical and herbal gardens, beach and dune trails with abundant

10   public access, green roofs, alternative energy sources, habitat restoration, an environmental trust for

11   funding a local environmental project, panoramic views from the Monterey Peninsula to the Santa

12   Cruz Mountains, and fine-dining, featuring the best in local, organic, sustainable ingredients -- all

13   the vision of Dr. Ghandour.

14       6.       The Project has taken over 21 years in processing its entitlements.  The Project has

15   undergone eight legal challenges to permits and entitlements, and SNG prevailed on each such

16   challenge.  Over $60 million has been spent by SNG to bring the Project to this critical point.  SNG

17   and Tanam and Abbat -- both related entities to SNG -- have invested over $45 million of their own

18   funds in the Project in the past 21 years.  On April 11, 2014, the California Coastal Commission

19   granted a Coastal Development Permit ("CDP") for the Project, the most significant resort coastal

20   permit on the California coast in over two decades. Barriers to entry on the California coast are

21   extremely high and CDP's are very rarely obtained.  The Staff Report for the CDP, alone, included

22   a report with over 650 pages.

23       7.       On May 30, 2014, SNG received a Notice of Intent to Issue a Coastal Development

24   Permit ("Notice of Intent") for the Project.  Although the Notice of Intent required SNG to complete

25   over 50 Prior To Issuance ("PTI") conditions in order to obtain issuance of the Coastal

26   Development Permit ("CDP"), the procurement of the Notice of Intent, alone, was an achievement

27   that few believed was ever possible to accomplish for a project on the Monterey coast, and probably

28   on any coast in California.  Through Herculean efforts, by August 1, 2014, SNG had completed all

Jeffer Mangels
Butler & Mitchell LLP

JMBM

LA 11209085v3

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

of the PTI conditions and had submitted evidence of such completion and related materials to the California Coastal Commission for review. SNG continues to work with its team and Commission staff on the PTI conditions and post issuance conditions in order to ready the Project for pre-development and subsequent construction. SNG simultaneously prepared for a hearing for consistency of findings with the Notice of Intent PTI conditions necessary for the issuance of the CDP, which was held on August 15, 2014 in San Diego, California. The Staff Report for the Revised Findings exceeded over 500 pages and necessitated extensive work and resources to prepare for. SNG overcame all challenges at the August 15, 2014 hearing and the Commission approved the Revised Findings, as amended, following discussions between Commission staff and SNG.

**The Loan**

8.     In April 2008, SNG approached Fourth Third, seeking a loan in connection with the development of the Project. Fourth Third approved SNG to borrow up to, and loaned SNG, the sum of $20,303,125 (the "Loan"). The initial documents memorializing and relating to the Loan include the following:

(a)     that certain Credit Agreement dated as of April 21, 2008 (as amended, modified and supplemented, the "Credit Agreement"), a true and correct copy of which is attached hereto as Exhibit 1 (along with any modifications or amendments thereto) and incorporated herein by reference;

(b)     that certain Promissory Note (the "Note") dated April 21, 2008, in the principal sum of $22,500,000, a true and correct copy of which is attached hereto as Exhibit 2 (along with any modifications or amendments thereto) and incorporated herein by reference. The original maturity date of the Note was April 20, 2011;

(c)     that Deed of Trust and Absolute Assignment of Rents and Leases and Security Agreement (and Fixture Filing) (the "Deed of Trust"), dated as of April 21, 2008, which was recorded in the Official Records of Monterey County as Document No. 2008024890 against the subject property that SNG owns in Monterey County, California, commonly known as "Monterey Bay Shores," and more particularly described in Exhibit A to the Deed of Trust (the "Legal

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

PRINTED ON
RECYCLED PAPER

LA 11209085v3

Description of Land"). A true and correct copy of the Deed of Trust is attached hereto as Exhibit 3 and incorporated herein by reference; and

        (d)    that UCC-1 Financing Statement ("UCC 1") recorded in the Office of the California Secretary of State on April 22, 2008, concerning the property described therein. A true and correct copy of the UCC 1 is attached hereto as Exhibit 4 and incorporated herein by reference.

**The Loan Extensions**

9.    Pursuant to that certain Amendment to Credit Agreement ("Amendment #1") executed by Fourth Third and SNG made as of November 12, 2010, Fourth Third agreed to extend the maturity date of the Note from April 20, 2011, to November 15, 2012. Among other things, Amendment #1 provides that "Section 2.4.3 is added to the Credit Agreement to impose additional loan fees on [SNG], as follows: 2.4.3. Loan Fees. [SNG] agrees to increase the principal of the Loan as set forth in a side letter of even date hereof." Amendment #1 is attached hereto as Exhibit 5 and incorporated herein by reference.

10.    The "side letter" referred to in Amendment #1 is that letter dated November 11, 2010, from Fourth Third to SNG (the "Side Letter"), which is attached hereto as Exhibit 6 and incorporated herein by reference, whereby Fourth Third imposed on SNG a last minute penalty to accept an extension when Fourth Third determined to stop funding SNG because it had elected to close Fourth Third, strip the fund, and go public through Medley. As set forth in the Side Letter, the "principal of the Loan [shall be increased] by the amount of $1,000,000 as an additional loan fee if the Loan is not paid in full by June 30, 2011; and … the principal of the Loan [shall be increased] by an additional $500,000 loan fee for every calendar quarter after September 30, 2011 until the Loan is repaid in full." These additional "loan fees" are penalties imposed upon by Fourth Third and such penalties had as of the execution of the Side Letter and Amendment #1 and have no relationship to any actual pecuniary loss of Third Fourth and represent unenforceable penalties which are not collectible or enforceable under applicable law. They are also prohibited under the Subordination Agreements entered into between Tanam and Abbat, on the one hand, and Fourth Third, on the other.

LA 11209085v3

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

11.     Pursuant to that Second Amendment to Credit Agreement ("Amendment #2") executed by Fourth Third and SNG made as of December 13, 2012, Fourth Third agreed to further extend the maturity date of the Note from the then November 15, 2012 maturity date to June 15, 2014.  A true and correct copy of the Amendment #2 is attached hereto as Exhibit 7 and incorporated herein by reference.

12.     As a result of Fourth Third's unlawful, fraudulent and bad faith conduct alleged herein and as set forth below, SNG was prevented from fully satisfying the Loan on the terms and conditions subsequently agreed to by Fourth Third for a discounted payoff of the Loan.

13.     On July 25, 2014, Fourth Third caused a Notice of Default and Election to Sell Under Deed of Trust (the "Notice of Default") to be recorded in the Monterey County Recorder's Office against the Property.  A true and correct copy of the Notice of Default is attached hereto as Exhibit 8 and incorporated herein by reference.

**The Representations and Promises**

14.     In January of 2013, Fourth Third and Medley approached SNG about payoff the loan early.  In response, Dr. Ghandour, on behalf of SNG, and Andrew Fentress and Tom Quimby, on behalf of Fourth Third through Medley, and Steven Weinstein of Marketmaker Capital, a financial consultant to SNG, began discussing a modification to the Credit Agreement and Note.  Following numerous communications and negotiations between January of 2013 and May of 2013, on May 9, 2013, Mr. Fentress, on behalf of Fourth Third through Medley, orally represented to Dr. Ghandour, in a face-to-face meeting between Mr. Fentress and Dr. Ghandour in Medley's New York offices, and on behalf of Fourth Third, agreed that the Loan would be modified such that Fourth Third would accept a discounted payoff of $15 million (the "DPO") on the approximate $28.2 million balance claimed by Medley as due on the Credit Agreement/Note, provided that SNG would continue to process the entitlements on the Project and would make arrangements to borrow funds in an amount sufficient to pay off the senior loans secured by the Property/Project held by AXYS Capital Income Fund, LLC, in the approximate original amount of $4,240,000, plus the DPO ($15,000,000) (the "DPO Agreement").  Fourth Third and Mr. Fentress were aware that SNG would rely upon and take action based upon these representations and agreements made by Mr. Fentress,

LA 11209085v3
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

1   and SNG did, in fact, rely upon, and take action based upon, these representations and agreements

2   made by Mr. Fentress.   However, unknown to SNG, Fourth Third and Medley, at the time the

3   representations set forth in this paragraph and the DPO Agreement were made, never intended to

4   acknowledge, honor or comply with such representations and the DPO Agreement.

5   **The Reliance and Refusal to Honor the Representations and Promises**

6   15.   After, and in reliance upon, the above representations made by Fourth Third through

7   Mr. Fentress, SNG for the next year, continued, pursuant to the DPO Agreement, to process the

8   Project's entitlements and CDP, obtained the Notice of Intent, and undertook the time-consuming

9   and arduous task of locating a new substitute lender.

10   16.   On June 2, 2014, SNG, in reliance upon the above representations made by Fourth

11   Third through Mr. Fentress, performed its obligations under the DPO Agreement and arranged to

12   borrow from Marathon Asset Management, through Marathon Real Estate Acquisition II, LLC, the

13   funds necessary to pay the DPO to Fourth Third and to satisfy the senior secured loan held by

14   AXYS Capital Income Fund, LLC, plus an additional amount to be used as working capital for

15   SNG and an amount for pre-development costs so that the Project could move forward to the design

16   phase.   This arrangement with the new proposed lender was contingent upon Fourth Third/Medley

17   accepting the DPO in full satisfaction of the Credit Agreement/Note, as it had represented it would.

18   SNG notified Medley of the new proposed loan/funding and tendered the DPO; however, Fourth

19   Third/Medley, contrary to the representations made by Mr. Fentress of Medley, Fourth Third's

20   agent, failed and refused to honor its representations, commitment and the DPO Agreement to

21   accept the DPO in full satisfaction of the Credit Agreement/Note.   Fourth Third further refused to

22   submit any demand/payoff statement to Chicago Title Company, the escrow holder for the closing

23   of the new proposed loan, notwithstanding that a request for such demand/payoff statement was

24   made, Fourth Third was the only lender that failed and refused to submit its demand within 21 days

25   of the request therefore, as required by California Civil Code Section 2943.   Because of Fourth

26   Third's bad faith actions, misrepresentations and refusal to honor the DPO Agreement, SNG could

27   not close and obtain the new substitute loan.

28

PRINTED ON
RECYCLED PAPER

LA 11209085v3

JMBM | Jeffer Mangels
Butler & Mitchell LLP

17.     Despite SNG's ability to pay, and tender of, the DPO prior to the June 15, 2014 maturity date of the Credit Agreement/Note in accordance with the terms of the DPO Agreement, Fourth Third and Medley (a) refused to acknowledge or honor its representations made by and through Mr. Fentress, as set forth above, and the DPO Agreement, and (b) refused to accept the DPO ($15,000,000) in full satisfaction of the Credit Agreement/Note. Thereafter, Fourth Third recorded the Notice of Default and began foreclosure proceedings.

18.     On information and belief, Fourth Third and Medley had no intention of honoring their representations and the DPO Agreement, but rather planned and consciously intended to string SNG along and have SNG spend over a year of its time and efforts and expend additional substantial funds, all to add tremendous value to the Property and Project, including obtaining the entitlements SNG obtained, so that at the last second, Fourth Third and Medley could demand full payment of all sums due under the Credit Agreement/Note, without regard for the DPO Agreement, place SNG into default, record the Notice of Default and foreclose on the Property and Project, and wrongfully and fraudulently reap for themselves windfall profits from SNG's obtaining the permit as a result of its vision, diligent efforts, and commitment to the Project for over the last two decades, and in reliance on the representations made by Fourth Third and Medley.

**The Harm**

19.     Fourth Third's and Medley's failure to acknowledge and honor their representations and the DPO Agreement to accept the DPO as full satisfaction of all obligations under the Credit Agreement/Note and commencement of foreclosure proceedings against the Property and Project have jeopardized SNG's financing for the Project, which, in turn, jeopardizes SNG's ability to obtain the issuance of the CDP and complete the entitlement and pre-development processing and, ultimately, the construction of the Project.

20.     The monetary damages sustained and to be sustained from Fourth Third's and Medley's wrongful and fraudulent conduct likely exceeds $300 million, the projected net profits for the Project. Moreover, if the present entitlements and permits obtained by SNG for the Property expire, it is unlikely that any project similar to Monterey Bay Shores will ever be permitted on that site. At best, one would have to start all over again, a daunting, very costly, risky and perhaps

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

PRINTED ON

RECYCLED PAPER

LA 11209085v3

1   another decades-long challenging process.  Due to the intentionally wrongful and fraudulent

2   conduct of Fourth Third and Medley, SNG is in danger that the unique, sustainable green Project

3   will be forever lost, for SNG and the Monterey Peninsula.

### FIRST CLAIM FOR RELIEF

**(Breach of Oral Contract--Against Fourth Third Roes 1 to 10)**

6   21.   SNG incorporates herein by this reference Paragraphs 1 through 20 of this

7   Counterclaim.

8   22.   Except for those excused or waived by Fourth Third, SNG has performed all

9   conditions, covenants and promises required on its part to be performed in accordance with the

10   terms and conditions of the DPO Agreement, including continuing to process the entitlements on

11   the Project and making arrangements to, and obtaining a loan to, borrow funds in an amount

12   sufficient to pay off the senior loans secured by the Property/Project held by AXYS Capital Income

13   Fund, LLC, in the approximate original amount of $4,240,000, plus the DPO ($15,000,000), plus

14   additional working capital for SNG and an amount for pre-development costs, which Fourth Third

15   agreed to accept, and SNG tendered, in full and complete satisfaction of SNG's obligations under

16   the Credit Agreement/Note.

17   23.   In early to mid-June, 2014, Fourth Third materially breached the DPO Agreement by

18   failing and refusing, and continuing to fail and refuse to (a) acknowledge the existence of the DPO

19   Agreement and (b) accept the DPO, i.e., $15,000,000, in full and complete satisfaction of SNG's

20   obligations under the Credit Agreement/Note.

21   24.   As a direct and proximate result of Fourth Third's breach of the DPO Agreement,

22   SNG has been harmed and damaged in a presently unliquidated amount but within the jurisdiction

23   of this Court.

24   25.   As the DPO Agreement is a modification to the Credit Agreement/Note and Deed of

25   Trust and other related Loan documents, which contain provisions awarding attorney fees to the

26   prevailing party in an action concerning the Loan, SNG is also entitled to and seeks its attorney's

27   fees in connection with this dispute and action.

28

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

LA 1120908Sv3

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

**SECOND CLAIM FOR RELIEF**

**(Promissory Estoppel--Against Fourth Third and Roes 5 to 20)**

26.     SNG incorporates herein by this reference Paragraphs 1 through 20 of this Counterclaim.

27.     As a result of Fourth Third's representations made by Mr. Fentress, as set forth above, and agreeing to the DPO Agreement and the terms thereof, and in doing so, Fourth Third knew or should have known that SNG would be reasonably induced to rely on Fourth Third's representations made by Mr. Fentress, as set forth above, and the DPO Agreement and the terms thereof, by continuing to process the Project's entitlements, obtain the CDP and Notice of Intent, complete all of the PTI conditions and submit evidence of such completion and related materials to the California Coastal Commission for review, and to undertake the time-consuming and arduous task of locating, and actually obtaining, a new substitute lender to loan SNG funds in an amount sufficient to pay off the senior loans secured by the Property/Project held by AXYS Capital Income Fund, LLC, in the approximate original amount of $4,240,000, plus the DPO ($15,000,000), plus additional working capital for SNG and an amount for pre-development costs.

28.     SNG reasonably relied on Fourth Third's representations made by Mr. Fentress, as set forth above, and by agreeing to the DPO Agreement and the terms thereof and was induced to continue to process the Project's entitlements, to obtain the CDP and Notice of Intent, to complete all of the PTI conditions and submitting evidence of such completion and related materials to the California Coastal Commission for review, and to undertake the time-consuming and arduous task of locating, and actually obtaining, a new substitute lender to loan SNG funds in an amount sufficient to pay off the senior loans secured by the Property/Project held by AXYS Capital Income Fund, LLC, in the approximate original amount of $4,240,000, plus the DPO ($15,000,000), plus additional working capital for SNG and an amount for pre-development costs.

29.     As a direct and proximate result of Fourth Third's failure to perform in accordance with its representations and promises, as made by Mr. Fentress, as set forth above, to SNG, and the DPO Agreement, SNG has been harmed and damaged in a presently unliquidated amount but within the jurisdiction of this Court.

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

PRINTED ON

RECYCLED PAPER

JMBM Jeffer Mangels Butler & Mitchell LLP

30.     Injustice can be avoided only by enforcing Fourth Third's representations made by Mr. Fentress, as set forth above, to SNG, and the DPO Agreement and the terms thereof completely.

**THIRD CLAIM FOR RELIEF**

**(Fraud--Against Fourth Third, Medley, and Roes 10 to 30)**

31.     SNG incorporates herein by this reference Paragraphs 1 through 20 of this Counterclaim.

32.     Each and every representation made by Fourth Third and Medley by and through its mutual agent and representative Mr. Fentress, as set forth in paragraph 14 above, was false when made.  The true facts were that Fourth Third and Medley knew and concealed, at the time such representations were made, that each of them would, in the future, not acknowledge, honor or perform in accordance with such representations and the DPO Agreement and would disavow the existence of such representations and DPO Agreement.  SNG could not reasonably be aware of such true undisclosed intent of Fourth Third and Medley.

33.     When the representations were made by Fourth Third and Medley, by and through their mutual agents and representatives, Mr. Fentress, as set forth in paragraph 14 above, Fourth Third and Medley knew the representations to be false and made such representations with the intent to deceive and defraud SNG and to induce SNG to act in reliance on such representations.

34.     SNG, at the time the subject representations were made by Fourth Third and Medley, by and through their mutual agent and representative Mr. Fentress, as set forth in paragraph 14 above, and at the time SNG took the actions herein alleged, including continuing to process the Project's entitlements, obtaining the CDP and Notice of Intent, completing all of the PTI conditions and submitting evidence of such completion and related materials to the California Coastal Commission for review, and the undertaking of the time-consuming and arduous task of locating, and actually obtaining, a new substitute lender to loan SNG funds in an amount sufficient to pay off the senior loans secured by the Property/Project held by AXYS Capital Income Fund, LLC, in the approximate original amount of $4,240,000, plus the DPO ($15,000,000), plus additional working capital for SNG and an amount for pre-development costs, was ignorant of the falsity of such representations and believed them to be true.  In reliance on such representations, SNG was induced

Jeffer Mangels
Butler & Mitchell LLP
JMBM

to, and took, the actions set forth herein. Had SNG known the actual facts, it would not have taken such actions. SNG's actions in reliance upon such representations were justified because SNG had no reason, and no reasonable person would have had any reason, to believe that the representations were false.

35.     As a direct and proximate result of Fourth Third's and Medley's fraudulent conduct as herein alleged SNG undertook the acts alleged herein and has been harmed and damaged in a presently unliquidated amount but within the jurisdiction of this Court.

36.     The above described conduct of Fourth Third and Medley, and each of them, was an intentional misrepresentation, deceit or concealment of material facts known to Fourth Third and Medley, and each of them, with the intention on the part of Fourth Third and Medley, and each of them, of depriving SNG of property and legal rights or otherwise causing injury, and was despicable conduct that has subjected SNG to a cruel and unjust hardship in conscious disregard of SNG's rights, so as to justify an award of exemplary and punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Wrongful Foreclosure--Against Fourth Third and Roes 5 to 35)

37.     SNG incorporates herein by this reference Paragraphs 1 through 20 of this Counterclaim.

38.     The Notice of Default is invalid.

39.     The Notice of Default, which is required by applicable law to set forth the amount necessary to cure SNG's default under the Loan/Credit Agreement/Note, asserts that the amount necessary to cure such default is, as of July 3, 2014, the sum of $43,079,682.72, which includes no less than the sum of $7,000,000 of "loan fees" pursuant to Amendment #1.

40.     The "loan fees" described in Amendment #1 is an actual penalty which is unenforceable under applicable law because such "loan fees", as of the date of the execution of Amendment #1, bear absolutely no relationship to any actual pecuniary loss to be incurred by Fourth Third.

41.     As the "loan fees" set forth in Amendment #1 are unenforceable penalties, and such "loan fees" are included in the Notice of Default as being required to be paid in order to cure SNG's

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

PRINTED ON

RECYCLED PAPER

LA 11209085v3

defaults, the Notice of Default is legally invalid and no foreclosure proceeding can proceed under such Notice of Default.

42.     As a direct and proximate result of Fourth Third's wrong and invalid Notice of Default, SNG has been harmed and damaged in a presently unliquidated amount but within the jurisdiction of this Court.

43.     The above described conduct of Fourth Third was malicious and undertaken with the intent to injure SNG and deprive SNG of the Property and Project, and/or with a willful and conscious disregard of SNG's rights and was despicable conduct that has subjected SNG to a cruel and unjust hardship in conscious disregard of SNG's rights, so as to justify an award of exemplary and punitive damages.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Relief--Against Fourth Third and Roes 5 to 40)

44.     SNG incorporates herein by this reference Paragraphs 1 through 20 of this Counterclaim.

45.     An actual controversy has arisen and now exists between SNG and Fourth Third concerning their respective rights, duties and obligations concerning and the enforceability of (a) the "loan fees" set forth in Amendment #1 and included in the Notice of Default and (b) Notice of Default.  SNG contends that (a) the "loan fees" set forth in Amendment #1 is a "penalty" that is unenforceable under applicable California law because, among other things, such "loan fees" bear no relationship to any actual pecuniary loss of Fourth Third and (b) the Notice of Default is incorrect and invalid because it contains, and demands the payment of, the "loan fees" set forth in Amendment #1 and, therefore, Fourth Third cannot conduct a foreclosure sale under the Notice of Default.  On the other hand, Fourth Third contends that the subject "loan fees" are not penalties and are enforceable and collectible.

46.     SNG desires a judicial determination of its rights, duties and obligations concerning those "loan fees" set forth in Amendment #1 and the Notice of Default and a declaration that the "loan fees" set forth in Amendment #1 are unenforceable penalties which cannot be collected by Fourth Third and that the Notice of Default is, due to the inclusion of the subject "loan fees" and

LA 1120905v3

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1    contrary to the DPO Agreement, invalid and that no foreclosure of the Property can proceed under

2    the Notice of Default.

3          47.    A judicial declaration is necessary and appropriate at this time under the

4    circumstances in order for SNG to ascertain (a) its rights, duties and obligations with respect to the

5    imposition and payment of those "loan fees" set forth in Amendment #1 and (b) the validity of the

6    Notice of Default.

7          48.    As a direct and proximate result of Fourth Third's wrongful demand for the payment

8    of the subject "loan fees" pursuant to Amendment #1 and Fourth Third's recordation of an invalid

9    and unenforceable Notice of Default SNG has been harmed and damaged in a presently

10   unliquidated amount but within the jurisdiction of this Court.

11         49.    SNG is entitled to recover its attorney's fees from Fourth Third concerning this claim

12   for relief because the loan documents, under which Fourth Third recorded its Notice of Default and

13   to which Amendment #1 modifies, contains a provision for the recovery of attorney's fees.

**SIXTH CLAIM FOR RELIEF**

**(Injunctive Relief--Against Fourth Third and Roes 5 to 45)**

16         50.    SNG incorporates herein by this reference Paragraphs 1 through 20 of this

17   Counterclaim.

18         51.    Fourth Third's pending foreclosure under the wrong, incorrect and invalid Notice of

19   Default threatens to wrongfully foreclose on and wrongfully take the Property and Project from

20   SNG.

21         52.    Fourth Third's pending wrongful foreclosure, unless and until enjoined and

22   restrained by an order of this Court, will cause great and irreparable injury to SNG because Fourth

23   Third will complete a foreclosure on, and take away from SNG, the Property and Project.

24         53.    SNG has no adequate remedy at law for the injuries, i.e., wrongful foreclosure of the

25   Property, that are threatened by Fourth Third's foreclosure proceeding under the wrong, incorrect

26   and invalid Notice of Default because the Property is unique and monetary damages cannot

27   compensate SNG for the wrongful loss of the Property.

28

PRINTED ON

RECYCLED PAPER

LA 11209085v3

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

JMBM | Jeffer Mangels Butler & Mitchell LLP

**SEVENTH CLAIM FOR RELIEF**

**(Breach of Implied Covenant of Good Faith and Fair Dealing--**

**Against Fourth Third and Roes 1 to 50)**

54.     SNG incorporates herein by this reference Paragraphs 1 through 20 of this Counterclaim.

55.     SNG and Fourth Third entered into the DPO Agreement.

56.     SNG did all, or substantially all of the material things that the DPO Agreement required SNG to do, except for those that SNG was excused from having to do.

57.     Fourth Third unfairly interfered with SNG's right to receive the benefits of the DPO Agreement.

58.     SNG has been harmed and damaged by Fourth Third's conduct in a presently unliquidated amount but within the jurisdiction of this Court.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Counter-Claimant prays for judgment as follows:

FIRST CLAIM FOR RELIEF

1.     For compensatory damages in an amount according to proof;

SECOND CLAIM FOR RELIEF

2.     For compensatory damages in an amount according to proof;

THIRD CLAIM FOR RELIEF

3.     For compensatory damages in an amount according to proof;

4.     For punitive damages in an amount according to proof;

FOURTH CLAIM FOR RELIEF

5.     For compensatory damages in an amount according to proof;

6.     For punitive damages in an amount according to proof;

FIFTH CLAIM FOR RELIEF

7.     A judicial declaration that the Notice of Default is incorrect and invalid because it (a) contains and demands the payment of "loan fees" that are an unenforceable penalty, and (b) is contrary to the DPO Agreement, and therefore Fourth Third cannot foreclose on the Property or

LA 11209085v3

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

1  Project;

2                        SIXTH CLAIM FOR RELIEF

3        8.      For damages in an amount according to proof;

4                       SEVENTH CLAIM FOR RELIEF

5        9.      For damages in an amount according to proof;

6                       ON ALL CLAIMS FOR RELIEF

7        10.     For attorney's fees as allowed by law;

8        11.     For prejudgment and post-judgment interest as allowed by law;

9        12.     For costs of suit incurred; and

10       13.     For such other relief as the Court may deem just and proper.

11                       **<u>DEMAND FOR JURY TRIAL</u>**

12        SNG hereby demands a jury trial for all claims in this action which can be tried to and

13  before a jury.

14

15  DATED:  September 2, 2014            JEFFER MANGELS BUTLER & MITCHELL LLP

16

17                                       By: /s/ Eudeen Y. Chang
                                              EUDEEN Y. CHANG
18                                        Attorneys for Defendant and Counter-claimant
                                          SNG, INC.
19

20

21

22

23

24

25

26

27

28

LA 11209085v3
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

PRINTED ON
RECYCLED PAPER

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

3

     I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  3 Park Plaza, Suite 1100, Irvine, California

4

92614.

5

     On September 2, 2014 I served the document(s) described as **ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM; DEMAND FOR JURY TRIAL** with the Clerk of the

6

United States District Court for the Northern District of California, using the CM/ECF System.  The Court's CM/ECF System will send an email notification of the foregoing filing to the following

7

parties and counsel of record who are registered with the Court's CM/ECF System:

8

Robert A. Julian                                                    *Attorneys for Plaintiff FOURTH THIRD LLC*
Justin E. Rawlins

9

Scotia J. Hicks
Winston & Strawn, LLP

10

101 California Street
San Francisco, CA 94111-5802

11

12

Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400

13

14

☒    (BY ELECTRONIC SERVICE VIA CM/ECF SYSTEM) In accordance with the electronic filing procedures of this Court, service has been effected on the aforesaid party(s) above,

15

whose counsel of record is a registered participant of CM/ECF, via electronic service through CM/ECF System.

16

☒    (FEDERAL)   I declare that I am employed in the office of a member of the bar of this court

17

at whose direction the service was made.

18

Executed on September 2, 2014, at Irvine, California.

19

                /s/ Eudeen Y. Chang

20

                Eudeen Y. Chang

21

22

23

24

25

26

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 11209085v3

- 25 -